## UNITED STATES *v.* THE WALLA WALLA.

*(District Court, D. Washington, N. D.    January 19, 1891.)*

CUSTOMS DUTIES—FRAUDULENT IMPORTATION—LIABILITY OF VESSEL.

　　Where a vessel employed as a common carrier was seized to enforce a lien for a penalty under section 3088, Rev. St., there being probable cause for the seizure, but no charge of wrong-doing against the owner, *held* that, in the absence of rebutting evidence, proof that packages supposed to contain the contraband goods were received, transported, and delivered as freight in due course of business, and that the master had no knowledge with reference thereto, makes a sufficient case for the claimant, and the vessel must be released.

*(Syllabus by the Court.)*

At Law.

*P. H. Winston,* U. S. Atty., and *P. C. Sullivan,* Asst. U. S. Atty. *J. C. Haines,* for claimant.

HANFORD, J.    In this case the steam-ship Walla Walla, engaged as a common carrier of freight and passengers on the route between San Francisco and the Puget Sound ports, via Victoria, in British Columbia, was seized on the 19th day of March, 1889, to enforce a lien under section 3088, Rev. St., for a penalty alleged to have been incurred by her master by violations of sections 2806, 2807, 2809, 3126, Rev. St.   The cir-

cumstances which led to the seizure are as follows: A short time prior to the arrest of the vessel, the custom-house officers discovered and seized at Tacoma two barrels containing 370 pounds of opium, prepared for smoking, and about the same time discovered and seized at Ellensburgh three other barrels containing 530 pounds of prepared opium. The barrels seized at Tacoma were first discovered in a car *en route* from Ellensburgh by rail, via Portland, to San Francisco. Those seized at Ellensburgh were found in the railroad warehouse. There was nothing upon the outside of either of the barrels to indicate that they contained opium, but they appear to have been purposely disguised as to their contents. It was also discovered, and has been proven upon this trial, that in the month of February, 1889, the steam-ship Walla Walla discharged at Tacoma five barrels,—two on one trip, and three on a different trip,—which barrels were similar in all respects as to marks and general appearance to the barrels seized. Manifests or way-bills of railroad freight were also delivered at Tacoma at the time of unloading, showing that barrels of similar appearance and marks were brought in the vessel from San Francisco; one of the shipments being destined to Ellensburgh, consigned to J. Light, and the other destined to the same place, consigned to J. Dark. In the memoranda of railroad freight so delivered at Tacoma two of the barrels are referred to as containing "sauerkraut," the other three as containing "skid grease;" and it is also proven that neither of the five barrels were entered in the ship's manifest delivered at the custom-house at Port Townsend, as required by law, upon entering. From these circumstances a very strong inference arises that the barrels containing this opium are the identical barrels which were unladen from the Walla Walla at Tacoma, and must have been transported in the vessel either from San Francisco or from some other place at which she touched before arrival at Tacoma, and failure to enter such freight in the ship's manifest, as required by law, is a circumstance to justify suspicion of complicity on the part of the master in the unlawful importation of this opium; and I consider, and will certify, that there was probable cause for the accusation against the master in this case, sufficient to justify the seizure of the ship, and to throw the burden of proof upon the claimant, as provided in section 909, Rev. St.

On the part of the claimant, it is shown by the testimony of the purser and freight clerk, and by the ship's freight book and shipping receipts, that barrels corresponding in appearance and marks to those delivered at Tacoma were received as freight in due course of business at San Francisco, being delivered on the dock for shipment by a regular transfer company, and receipted for in the usual way, and without any circumstance to justify suspicion on the part of the ship's officers that the barrels contained contraband merchandise; and it is also shown that the master had no particular knowledge in regard to the cargo or the barrels in question. The master himself has testified that he had no knowledge whatever in regard to these barrels, or in regard to any freight transported upon either of the trips in question, and not appearing in the ship's manifest. This testimony is reasonable, and probably true; at

least, it is uncontradicted by the testimony of any witness, or by any circumstance proven in the case. Just when the opium was put into the barrels—whether before they were shipped from San Francisco, or whether it was clandestinely introduced into the vessel, and packed into the barrels at Victoria, or whether the contents of the barrels were changed after their arrival at Ellensburgh—cannot be determined by the testimony upon this trial; and in either case no penalty has been incurred for which the ship, being a common carrier, can be held liable, or in any way responsible, unless there was complicity in the smuggling of the opium on the part of her master or owner. 21 St. U. S. 322; *The Saratoga*, 9 Fed. Rep. 322.

As to the owner, the libel of information does not charge such complicity, and there is nothing in either the pleadings or proofs to raise an issue or justify inquiry.

The question as to guilty knowledge of the master is the one of chief importance, upon the answer to which the decision of the case must be predicated; and to this I find that it is shown, by a clear preponderance of the evidence, that Capt. Blackburn did not at any time have any knowledge whatever as to the barrels mentioned or their contents.

Let there be findings accordingly, and a decree in favor of the claimant.